IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 1:18-CR-426 |
| | ) | |
| LUIS M. LIRIANO-TORIBIO, | ) | Hon. Anthony J. Trenga |
| | ) | |
| Defendant. | ) | |

## MOTION FOR JUDGMENT OF ACQUITTAL

Defendant Luis M. Liriano-Toriobio ("Mr. Toribio"), through undersigned counsel, hereby moves pursuant to Fed. R. Crim. P. 29(c)(1) for a Judgment of Acquittal with respect to Count Two, attempted possession with the intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B)(ii)(II).[1]

After a two-day trial and over two days of deliberation, a jury acquitted Mr. Toribio of count one of the two-count Indictment, conspiracy to distribute or possess with intent to distribute a controlled substance. However, it convicted Mr. Toribio of count two, attempted possession with intent to distribute 500 grams or more of cocaine.

This is a case in which the jurors, despite their attempt to analyze evidence and apply legal principles properly, got it wrong. There is not merely insufficient

---

[1] The jury acquitted Mr. Toribio of count two- Conspiracy to Distribute or Possess with the Intent to Distribute Cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A)(ii)(II).

1

evidence, but zero evidence, to support the jury's finding that Mr. Toribio attempted to possess cocaine. If possible, there is even less of an evidentiary basis for the finding that he attempted to possess 500 grams or more, and even *less* of a basis for the finding that he intended to distribute cocaine. For this reason, the Court should enter a judgment of acquittal as to count two.

## BACKGROUND

Here is what the evidence at trial showed: On September 7, 2018, Luis Tavarez (aka "El Primo"), who lived in New York, and a DEA confidential source ("CS") set up a transaction for Tavarez to receive 50 kilograms of cocaine.[2] Afterward there was an aborted attempt to conduct the transaction. Tavarez and the CS then decided to try again on October 23. Tavarez's understanding was that, on that date at a loication in Virginia, he would give the CS over one-million dollars and the CS would give him a "trap car" containing narcotics in hidden compartments.[3] Tavarez drove from New York to Virginia in the Honda. Shortly before the transaction was set to occur, agents saw Mr. Toribio driving a BMW, with alleged co-conspirator Manny Lizardo in the passenger seat, to a Home Depot parking lot. The agents had once seen Tavarez drive the BMW. In the parking lot, Lizardo exited the BMW and went to another car to test the cocaine.[4] Mr. Toribio exited the BMW and went around the car to sit on the

---

[2] 3/13/19 Tr. pp. 38-46
[3] 3/13/19 Tr. p. 105
[4] 3/13/19 Tr. 52-112 *see also* Government's Exhibit 3-8, surveillance footage admitted at trial.

2

passenger side, at which point agents arrested him and Lizardo. Tavarez was arrested at a nearby hotel.

After his arrest, Mr. Toribio waived his *Miranda* rights. DEA Agent Ramon interrogated him but said he did not record the interrogation because it did not take place at a DEA facility. According to the agent, Mr. Toribio said that he met Tavarez during his job at a barbershop; he knew Tavarez was a drug dealer; and Tavarez paid him $5,000 to help him pick up a car in Virginia. The agent said that Mr. Toribio said he knew the trip was somehow "drug related," but said that he did not know whether actual drugs were involved, which drugs they may be, or how much of them might be involved.[5] Indeed, Agent Ramon testified that "he [Mr. Toribio] alleged not knowing the type of drugs and alleged not knowing the quantity of drugs."[6]

There were numerous calls between Tavarez's phone and Mr. Toribio's phone on October 23. Moreover, the calls between Tavarez and the CS were recorded. Here is what there was no evidence of: There was no evidence that Mr. Toribio ever texted with Tavarez or Lizardo about anything remotely drug-related before October 23, 2018. There was no evidence that Mr. Toribio ever texted with them about anything drug-related *on* October 23, 2018. There is no evidence that Mr. Toribio ever spoke—either in person or over the phone—with Tavarez or Lizardo about anything drug-related, much less that Tavarez or Lizardo told Mr. Toribio that he was driving to Virginia to help them pick up drugs. There is also of course no evidence that they

---

[5] 3/13/19 Tr. pp. 116-153
[6] 3/13/19 Tr. p. 136 lines 16-20

3

ever told Mr. Toribio what kind of drugs they were going to pick up, how much they were going to pick up, or what Tavarez ultimately intended to do with the drugs (i.e., distribute them). And in all the recorded conversations between Tavarez and the CS were recorded, at no point did he mention that the people he was bringing along knew the quantity of drugs involved.

The verdict form presented the jury with four quantity options for which the jury could hold Mr. Toribio accountable: 5 kilograms or more (of cocaine), 500 grams or more (of cocaine), less than 500 grams or more (of cocaine) and undeterminable. With respect to the quantity for which Mr. Toribio could be held accountable as an attempted possessor, the agreed-upon jury instruction stated the following:

> If you find the defendant guilty on Count 2, you will need to answer a question on the verdict form regarding drug weights attributable to the defendant as an attempted possessor.
>
> You are instructed that the defendant is accountable for the quantity of controlled substances that you find the government has proven beyond a reasonable doubt that he personally attempted to possess with intent to distribute.[7]

There was no evidence in the record to support finding a quantity of 500 grams or more of cocaine. Nevertheless, the jury found that Mr. Toribio attempted to possess such a quantity. As a result, Mr. Toribio faces a mandatory minimum sentence of five years.

---

[7] 3/14/19 Tr. p. 277, lines 13-14, attached hereto as Exh. 1.

## ARGUMENT

I. **A Judgment of Acquittal should be entered on count two.**

After a verdict, "[a] defendant may move for a judgment of acquittal, or renew such a motion" if "the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29. The question whether the evidence is insufficient turns on "whether there is substantial evidence (direct or circumstantial) which, taken in the light most favorable to the prosecution, would warrant a jury finding that defendant was guilty beyond a reasonable doubt." *United States v. MacCloskey*, 682 F.2d 468, 473 (4th Cir. 1982) (citing *United States v. Dominguez*, 604 F. 2d 304, 310 (4th Cir. 1979); *United States v. Stroupe*, 538 F. 2d 1063, 1066 (4th Cir. 1976)). The evidence must be sufficient to support each of the elements necessary for conviction beyond a reasonable doubt. *MacCloskey*, 682 F.2d at 474. A conviction cannot rest on mere speculation or conjecture. *United States v. D'Amato*, 39 F.3d 1249, 1256 (2d Cir. 1994). In the instant case, a Judgment of Acquittal should be entered with respect to count two because the evidence failed to establish that Mr. Toribio had the requisite *mens rea* for the offense of attempted possession of a controlled substance with the intent to distribute.

The elements of possession of a controlled substance with intent to distribute are: "(1) knowledge, (2) possession, and (3) intent to distribute the controlled substance." *United States v. Mata*, 491 F.3d 237, 242 (5th Cir. 2007). The *mens rea* for attempt is the mental state needed for the intent to commit the underlying offense. *United States v. Jadue*, 31 F. Supp. 3d 794, 798 (E.D. Va. 2014). The *mens*

*rea* of possession with intent to distribute requires a *specific intent* to distribute controlled substance. *See United States v. Ali*, 735 F.3d 176, 186 (4th Cir. 2013). With respect to intent to distribute, Mr. Toribio's jury was instructed that the phrase "'with intent to distribute' means to have in mind or to plan in some way to deliver or to transfer possession or control over a thing to someone else."[8]

As stated earlier, there is no evidence that Mr. Toribio ever spoke—either in person or over the phone—with Tavarez or Lizardo about anything drug-related, much less that Tavarez or Lizardo told Mr. Toribio that he was driving to Virginia to help them pick up drugs. There is also no evidence that they ever told Mr. Toribio what kind of drugs they were going to pick up, how much they were going to pick up, or what Tavarez ultimately intended to do with any drugs (i.e., distribute them). Even when viewed in the light most favorable to the government, there was no evidence that Mr. Toribio *himself* intended to possess the cocaine that Mr. Tavarez had arranged to purchase. Nor is there any evidence that he had the specific intent to distribute it. There is no evidence, for example, that he intended to take some of the cocaine and distribute it himself, or that he planned to assist Mr. Tavarez in distributing it once they returned to New York.

There was no evidence that Mr. Toribio had the specific intent to possess a controlled substance—let alone cocaine specifically—or that he had the specific intent to distribute it, his motion for judgment of acquittal on count two should be granted. *See United States v. Stephens*, 482 F.3d 669 (4th Cir. 2007) (evidence was insufficient

---

[8] 3/14/19 Tr. 275, line 22-24.

sustain conviction for conspiracy to distribute cocaine where, notwithstanding defendant's confession, corroborating evidence otherwise linking defendant to drug dealing operation was missing).

## II. A Judgment of Acquittal should be entered as to the quantity 500 grams or more.

Even assuming *arguendo* that there was sufficient evidence to convict Mr. Toribio of attempted possession with intent to distribute, there was a complete dearth of evidence as to Mr. Toribio's specific intent to possess 500 grams – or any specific amount – of cocaine.

With respect to drug quantity attributable to Mr. Toribio as an attempted possessor, the jury was properly instructed that in order to hold Mr. Toribio accountable for the drug quantities on the verdict form, it needed to find that the government proved beyond a reasonable doubt that "he personally attempted to possess [that quantity] with the intent to distribute it."[9] While there was testimony that would support a notion that Mr. Toribio knew the trip to Virginia was somehow "drug related," there was no evidence whatsoever that Mr. Toribio was ever told about the details of the drugs at issue. Thus, there was no evidence presented that would support a finding that Mr. Toribio was aware of the type of controlled substance was at issue, let alone a specific quantity. Furthermore, there was no evidence presented that Mr. Toribio had any experience with the drug trade such that it would have been

---

[9] 3/14/19 Tr. p. 277, line 13-14, transcript attached hereto as Exh. 1 (emphasis added).

7

reasonably foreseeable to him that Mr. Lizardo and Mr. Tavarez's behavior was consistent with a multi-kilogram purchase of cocaine.

In a case with facts strikingly similar to Mr. Toribio's, *United States v. Sanchez*, a district judge found that a defendant who drove a co-conspirator to a staged buy could not be held accountable at sentencing for the amount the co-conspirator negotiated with the CI where there was no direct evidence that the defendant was aware of the quantity negotiated by his co-conspirator. The district judge reasoned:

> I find that [the defendant] has demonstrated by a preponderance of the credible evidence that he had no actual knowledge of the quantity of narcotics involved in this conspiracy and that he could not have reasonably foreseen the quantity involved. Assuming, as I must, that [the defendant] conspired with his cousin to purchase a quantity of drugs, *there is simply no credible evidence that he was aware of or participated in any discussions regarding the amount. There is no evidence that [the defendant] discussed the quantity of drugs with Sanchez or the CI.* In addition, I specifically credit [the defendant's] testimony at both the trial and the sentencing hearing that he did not know the terms of the transaction. *There is no evidence that he ever saw any drugs or had anything to do with raising the money to purchase the drugs.* While he did see the money minutes before the arrest, this does not mean that he knew what drug or what quantity of drugs the money would be used to purchase.

*United States v. Sanchez*, 925 F. Supp. 991 (S.D.N.Y. 1996) (internal citations omitted) (emphases added). The reasoning in *Sanchez* applies with even more force to this case because in that case, the standard of proof was merely preponderance of the evidence, whereas here the standard is proof beyond any reasonable doubt. As in *Sanchez*, there was no evidence that Mr. Toribio ever discussed the quantity of drugs with Mr. Tavarez or Mr. Lizardo. There was no evidence that Mr. Toribio ever saw

8

any drugs or money. In speaking with Agent Ramon, Mr. Toribio stated that he was not aware of the quantity or type of drug involved. This sort of evidence (and lack of evidence) made it impossible to hold the defendant liable for the drug quantity in *Sanchez*; *a fortiori*, it makes it impossible to hold Mr. Toribio liable for the drug quantity here.

The Fourth Circuit has expressed concern about attributing drug quantities to defendants where there is little basis in fact for such an attribution. The Fourth Circuit has held that the trier of fact is not permitted to come up with a quantity based on "unbridled speculation." *United v. Hickman*, 626 F.3d 756 (4th Cir. 2010). A recent case, *United States v. Hickman*, is instructive here. In *Hickman*, the defendant was convicted of conspiracy to distribute and possession with intent to distribute one kilogram or more of heroin. The jury was asked on the verdict form whether the amount of heroin involved in the conspiracy had reasonably foreseeable to Hickman was 1) one kilogram or more, 2) less than one kilogram or more but greater than or equal to one hundred grams, or 3) less than one hundred grams. *Id* at 761. At trial, the government asked the jury to infer that the conspiracy involved at least one kilogram of heroin from the conspirators' familiarity with the drug trade. The Fourth Circuit rejected the government's attempt to draw inferences explaining, "the direct and circumstantial evidence on the record will simply not to do the work the Government assigned it, and we hold the evidence is insufficient to prove beyond a reasonable doubt the charged one-kilogram conspiracy." *Id.* at 762 (vacating conviction on conspiracy to one-kilogram of heroin with "directions to the district

court to enter judgment against Hickman for conspiracy to distribute one hundred grams or more of heroin, a lesser included offense encompassed by Count I."); *see also United States v. Daniels*, 723 F.3d 562, 570 (5th Cir. 2013) (upholding conviction for conspiracy but reversing as to drug quantity, noting that the "the only evidence the Government cites to surmise the quantity of cocaine obtained are cryptic vague phone calls between [co-conspirators]"); *United States v. Paulson*, 256 F. Supp. 3d 329, 338 (S.D.N.Y. 2017) ("[i]n sum, the Government offered insufficient evidence at trial to sustain the jury's finding with respect to drug quantity. Instead, the Government relies upon a series of inferences rooted in speculation rather than evidence.").

The jury's finding that Mr. Toribio attempted to possess 500 grams or more of cocaine was based on unbridled speculation. Should the Court choose not to issue a judgment of acquittal as to count two as a whole, it should at least issue such a judgment as to the quantity of 500 grams or more. *See Hickman* (where jury's verdict as to quantity is vacated, proper remedy is for district court to enter a conviction for lesser-included offense).

## CONCLUSION

For the reasons stated herein and any other reasons that the Court may find, Mr. Toribio moves the Court to grant his motion and enter a judgment of acquittal on count wo. In the alternative, he moves the Court to enter such a judgment as to the quantity.

          RESPECTFULLY SUBMITTED,
          Luis M. Liriano-Toribio
          Defendant

By:           /s/
          Elizabeth A. Mullin
          Virginia Bar No. 86668
          Brooke S. Rupert
          Virginia Bar No. 79729
          Rahul Sharma
          Virginia Bar No. 92828
          Attorneys for Defendant

          Office of the Federal Public Defender
          1650 King Street, Suite 500
          Alexandria, VA   22314
          (703)600-0800 (telephone)
          (703)600-0880 (facsimile)
          Brooke_Rupert@fd.org
          Elizabeth_Mullin@fd.org
          Rahul_Sharma@fd.org

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 15, 2019, I will electronically file the foregoing with the Clerk of court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

        Raj Parekh, Esq.
        United States Attorney's Office
        2100 Jamieson Avenue
        Alexandria, VA 22314

Pursuant to the Electronic Case Filing Policies and Procedures, a courtesy copy of the forgoing pleading will be delivered to Chambers within one business day of the electronic filing.

                            /s/
                        Elizabeth A. Mullin
                        Attorney for Defendant
                        Virginia Bar No. 86668